**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GERARD JACKSON, individually and on behalf of all others similarly situated, | : :  Civil File No. |
| Plaintiff, | : : : |
| v. | : **COMPLAINT – CLASS ACTION** : : |
| WALKER ADVERTISING LLC | : : |
| and | : : |
| JOHN DOE LEAD GENERATOR | |
| Defendants. | |

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. Indeed, the TCPA also prohibits making calls to numbers on the Do Not Call Registry because telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on

phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.   "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add her number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id.*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect her own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. The Plaintiff Gerard Jackson alleges that Walker Advertising LLC ("Walker"), through a "John Doe" lead generator it hired, made pre-recorded telemarketing calls for purposes of promoting lawyer's services for personal injury leads that would eventually be and were sold to law firms. They did so and contacted individuals without their prior express written consent.

6. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

7. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

8. Plaintiff is an individual residing in this District.

9. Defendant Walker Advertising, LLC is a California Limited Liability Company that makes telemarketing calls into this District.

10. Defendant identified only as John Doe Lead Generator is a lead generator that Defendant Walker hired to place the illegal calls at issue.

**Jurisdiction & Venue**

11. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

12. The Court has personal jurisdiction over Walker and Doe Lead Generator because they made telemarketing calls into this District and service clients in this District.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because the Plaintiff was contacted with a telemarketing call in this District.

## TCPA Background

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA prohibits automated telemarketing calls to cellular telephones</u>

15. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service …." *See* 47 U.S.C. § 227(b)(1)(A).

16. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

17. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 ¶ 165 (2003).

19. In 2012, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd 1830, 1844 (2012) (footnotes omitted).

The TCPA Also Prohibits Making Calls to Numbers on the Do Not Call Registry

20. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

21. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

22. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**Factual Allegations**

23.     Plaintiff is, and at all times mentioned herein were, a "person" as defined by 47 U.S.C. § 153(39).

24.     Walker is a marketing company that sells leads to attorneys, mainly personal injury firms.

25.     To generate leads which it eventually sells to such law firms, Walker relies on a small army of lead generators, including Defendant John Doe Lead Generator, to place illegal calls *en masse* using highly-illegal prerecorded robocalls in the hopes of reaching someone interested in hiring a personal injury lawyer as a result of an accident.

26.     These highly-illegal prerecorded telemarketing calls are made to consumers who have never had a relationship and who have never consented to receive their calls.

<u>Calls to Plaintiff</u>

27.     Plaintiff's residential telephone number, (814)-XXX-XXXX, is registered to a cellular telephone service, is on the National Do Not Call Registry, and has been for more than a year prior to the calls at issue.

28.     Mr. Jackson uses the number for personal, residential, and household reasons.

29.     The number is a residential telephone line because it is assigned to a cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

30.     Plaintiff Jackson never consented to receive calls from Defendants.

31.     Plaintiff Jackson never did business with the Defendants.

32. Despite this, the Plaintiff received at least eight pre-recorded calls from "spoofed" caller IDs bearing 814- area codes throughout April of 2024.

33. The Plaintiff answered various of these calls, who call transmitted the same pre-recorded voice that played:

This call is about your car accident, did you receive compensation yet?

34. The calls were clearly pre-recorded because (a) they were non-personalized (b) there was a delay before the message played (c) they had unnatural phrasing and cadence and were identical on each call, and (d) the Plaintiff was eventually transferred to an obvious human being who asked him the same question.

35. In an effort to identify the source of the illegal calls and for no other reason, the Plaintiff interacted with the robot and a human agent for the call he received from the caller ID 814-520-6983 at 19:09j on April 29, 2024.

36. During that call, the Plaintiff was asked various intake questions and was sold law firm personal injury services. At the conclusion of the sales pitch, the agent stated that they saw that the Plaintiff's number was on the National Do Not Call Registry and requested an alternate number to contact the Plaintiff. The Plaintiff provided the alternate number not on the Registry in an effort to identify the caller.

37. Almost immediately, at 19:13j, the Plaintiff received a call on the alternate number from the Caller ID 814-807-0727 from the same agent. During this call, the Plaintiff was asked more intake questions, the call was transferred to Defendant Walker, and was sold law firm personal injury services.

38.     Thereafter, the Plaintiff received a call from Defendant Walker, at 19:29j from the caller ID 310-427-3662, after the aforementioned call terminated for an unknown reason, Defendant Walker continued to asked various intake questions and attempted to sell the Plaintiff law firm personal injury services.

39.     Thereafter, on April 29 and April 30, the Plaintiff received the following text messages to the original cell phone that was called, confirming the source of the illegal calls and outlining the law firms to whom the Plaintiff's lead was sold. Upon information and belief, the first such text message originated from the Defendant Walker. Upon information and belief, the second such text message originated from the Defendant John Doe Lead Generator Defendant Walker hired:

> **+18146163870**
> 7:36 PM, Apr 29
>
> 1-800-THE-LAW2 values your trust. We have connected you to Berman Law Group 561-220-3583 who will take next steps in evaluating your case. If you have questions regarding your situation please call 561-220-3583. Berman Law Group headquarters is located in Boca Raton , the attorney may have additional office locations in your area. All the Best. Reply STOP to unsubscribe



40. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

41. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

42. The FCC has instructed that sellers such as Walker may not avoid liability by outsourcing telemarketing to third parties, such as Doe:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the

9

telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

43. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

44. Walker is liable for telemarketing calls placed by Doe and transferred to Walker to generate customers for Walker, including the Plaintiff.

45. Walker was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and only sell them the interested ones. Indeed, it was interested in hiring a lead generator that had the capability of making calls *en masse* and screening such individuals using automated means prior to Walker expending time and resources on them.

46. To do so, it hired Doe to orchestrate an *en masse* telemarketing campaign using highly-illegal prerecorded robocalls to numbers on the Do Not Call Registry.

47. Walker controlled the day-to-day activities of Doe by providing the specific criteria for the leads it would accept and required its vendors, including Doe, to adhere to those criteria.

10

48. For instance, Walker directed Doe to send it leads where the primary contact number was not on the National Do Not Call Registry, thereby attempting to sidestep liability under the TCPA and attempting to pull the wool over regulators' eyes and this Court.

49. However, Walker knew that the numbers were on the National Do Not Call Registry because it directly sent the aforementioned follow-up text message to Mr. Jackson's original number that was contacted, which was on the Do Not Call Registry.

50. Walker would not compensate Doe for a call it made unless the leads it purchased met the criteria set by Walker, including calls made subject to Walker's audit.

51. Indeed, Doe also had direct access to Walker's systems to verify the applicability of such criteria and what their payment would be on such calls, including the names and contact information of the law firms that Walker eventually sold the Plaintiff's lead to, as evidenced by the text message that Doe sent to the Plaintiff.

52. As such, Walker controlled the content of Doe's telemarketing and took steps to ensure it retained such control, such as by implementing such criteria.

53. Finally, Walker could have terminated Doe once it learned of Doe's illegal marketing conduct.

54. It did not.

55. Indeed, with full knowledge that Doe was calling numbers on the Do Not Call Registry, Walker doubled down and put complete trust in their third-party lead generator Doe and failed to identify them or the nature and extent of their involvement.

56. A reasonable seller, let alone one hiring telemarketers, would investigate why its telemarketers are calling numbers on the Do Not Call List with illegal prerecorded robocalls. They would not continue such misconduct by continuing to use such marketers and rely on them for scrubbing, registration, and regulatory compliance and continue to hide their identities.

57. Moreover, a reasonable seller would also investigate into the reasons why their marketer would be calling numbers on the National Do Not Call Registry as an initial matter.

58. Indeed, Walker could have investigated if the transfers it received were on the National Do Not Call Registry, whether the leads purchased were legitimate, whether the calls illegally used prerecorded calls, or if Doe was using automated means to send them.

59. It did not.

60. Walker hired Doe without a proper investigation and did not terminate them when they were informed of Doe's illegal calling conduct.

61. As such, they knowingly ratified Doe's conduct.

62. Walker accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote personal injury law firm services to him.

63. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

64. The calls were unwanted.

65. The calls were nonconsensual encounters.

66. Plaintiff's privacy has been violated by the above-described prerecorded telemarketing messages.

67. Plaintiff never provided his consent or requested the messages.

68. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

69. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (3).

70. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Robocall Class:** All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendants (or an agent acting on behalf of Defendants) placed a call (3) within the four years prior to the filing of the Complaint and through trial (4) using a pre-recorded message.
>
> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

71. Plaintiff is a member of and will fairly and adequately represent and protect the interests of this classes as he has no interests that conflict with any of the class members.

72. Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

73. Plaintiff and all members of the Classes have been harmed by the acts of the Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

74. This Class Action Complaint seeks injunctive relief and money damages.

75. The Classes as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

76. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

77. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

78. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

79. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

80. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

    (a) Whether the Defendants used pre-recorded messages to send calls;

    (b) Whether the Defendants made multiple telemarketing calls to numbers on the National Do Not Call Registry.

    (c) whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

    (d) whether Defendants' conduct constitutes a violation of the TCPA; and

    (e) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

81. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Class.

82. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

83. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

84. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

85. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227(b)) on behalf of the Robocall Class

86. Plaintiff incorporates the allegations from the foregoing paragraphs as if fully set forth herein.

87. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

88. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their residential or cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

89. If the Defendants' conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

90. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for

emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

### SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c), and 47 C.F.R. §§ 64.1200(c))**
**on behalf of the National Do Not Call Registry Class**

91. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

92. The Defendants violated the TCPA and its Implementing Regulations by making two or more telemarketing calls within a 12-month period to Plaintiff and the members of the National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

93. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and National Do Not Call Registry Class members are entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

94. Plaintiff and Class members are entitled to an award of treble damages if the Defendants' actions are found to have been knowing or willful.

95. Plaintiff and National Do Not Call Registry Class members are also entitled to and do seek injunctive relief prohibiting Defendants from advertising goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

    A.    Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, using a pre-record message in the future;

    B.    Injunctive relief prohibiting Defendants from calling telephone numbers on the National Do Not Call Registry absent prior express written consent in the future;

    C.    That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

    D.    An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

    E.    Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Respectfully submitted,

*/s/ Jeffrey M. Bower*
Jeffrey M. Bower (PA Bar No. 18266)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jbower@bower-law.com


PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln St., Suite 2400
Hingham, MA 02043
617-485-0018
anthony@paronichlaw.com
*Subject to Pro Hac Vice*

*Attorneys for Plaintiff and proposed class*