IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERARD JACKSON, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>WALKER ADVERTISING, LLC, and JOHN DOE LEAD GENERATOR,<br><br>    Defendants. | No.: 4:24-CV-00934<br><br>(Hon. Matthew W. Brann) |

**DEFENDANT WALKER ADVERTISING, LLC'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR LEAVE TO SERVE A THIRD-PARTY SUBPOENA PRIOR TO A RULE 26(F) CONFERENCE**

Defendant Walker Advertising, LLC ("Walker") hereby respectfully submits this Response to Plaintiff's Emergency Motion For Leave to Serve A Third-Party Subpoena Prior to a Rule 26(f) Conference (Dkt. 14) ("Motion"), stating as follows:

Plaintiff has no basis to litigate in this Court, given that he agreed to resolve this dispute in individual arbitration—not in putative class litigation. Walker's deadline to respond to the complaint is August 9, 2024, and it intends to move to compel this dispute to individual arbitration.[1] Plaintiff's claims will also ultimately

---

[1] Walker expressly reserves and does not waive its right to compel individual arbitration. Walker is only filing this brief given that Plaintiff chose to file his Motion prior to Walker's deadline to answer or otherwise respond to the complaint.

fail on the merits because he consented to receive the alleged marketing communications, but that is a matter for the arbitrator to resolve.

Instead of submitting to arbitration as he previously agreed, Plaintiff now moves for early discovery. In particular, he seeks emergency leave to subpoena Comcast Cable Communications LLC ("Comcast") for records related to an IP address associated with an Internet session during which Plaintiff agreed to individual arbitration and consented to receiving marketing communications. In doing so, Plaintiff makes incorrect statements, two of which Walker now seeks to correct.[2]

*First*, Plaintiff claims Comcast's records will not identify him, thus proving he did not agree to arbitrate or consent to receive marketing communications. But IP addresses do not identify who is using an internet connection or where that person is, meaning, by definition, Comcast's records for the IP address at issue cannot prove that Plaintiff did *not* agree to arbitrate and did *not* consent to receiving the alleged communications. *Second*, Comcast retains records associated with IP addresses for at least 180 days, meaning that Comcast will retain the records at issue here through at least October 26, 2024—not merely through July 28, 2024, as Plaintiff claims.

---

[2] Although Plaintiff makes several other inaccurate statements throughout his Motion, Walker does not seek to burden the Court with a point-by-point response.

2

I.  **BACKGROUND**

A.  **Plaintiff Agreed to Submit This Dispute to Individual Arbitration**

Plaintiff alleges that he received unsolicited marketing communications from a third party that allegedly were made on behalf of Walker. Compl. ¶¶ 27-38. Walker denies these allegations. But having raised this dispute, Plaintiff had no basis to file a class action complaint in this Court on June 6, 2024 because he agreed to submit this dispute to individual arbitration. *See generally* Compl. (Dkt. 1).

On or about April 29, 2024, Plaintiff visited the website (https://motorvehicleaccident.us/) of the third party at issue, Motor Vehicle Accident; input his name, email address, and telephone number; checked a box next to consent language; and clicked "Submit." In doing so, Plaintiff agreed to hyperlinked Terms and Conditions that contain an arbitration agreement and class waiver provision. *See*, *e.g.*, *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 238 (E.D. Pa. 2007) (holding that consent given via clicking a checkbox was enforceable, like similar clickwrap agreements that contained arbitration clauses); *Davis v. Dell, Inc.*, 2007 WL 4623030, *4 (D.N.J. 2007) (holding clickwrap arbitration agreement is enforceable); *Davis v. USA Nutra Labs*, 303 F. Supp. 3d 1183, 1189-93 (D.N.M. 2018) (citing *Feldman* and holding clickwrap arbitration agreement is enforceable).

That arbitration agreement requires Plaintiff to arbitrate his dispute related to the alleged marketing communications not only with Motor Vehicle Accident but

3

also with Walker. It provides in part:

> You agree to attempt in good faith to settle any dispute or claim that has or may arise between us, which arises out of or relates in any way to these Terms or your use of the Site or the Content, including, without limitation, any dispute or claim between you and a Provider [i.e., an insurance agent, insurance company, lead aggregator and other similar party] (each, a "Claim"), by way of consultations between you and us . . . You agree to arbitrate all Claims between you and us, or any Provider, that cannot be amicably resolved in accordance with the foregoing paragraph.

*See* Motor Vehicle Accident Terms and Conditions, available at https://motorvehicleaccident.us/terms-and-conditions/.

The Terms and Conditions also contain a class waiver, which states:

> You agree that, by entering into this arbitration agreement, you and we are each waiving our respective rights to a trial by jury or to participate in a class or representative action, and that arbitration of disputes pursuant to this Section 2 shall be in your individual capacity. THIS MEANS YOU ARE LIMITING YOUR RIGHT TO APPEAL AND ARE WAIVING YOUR RIGHTS TO OTHER AVAILABLE RESOLUTION PROCESSES, SUCH AS A COURT ACTION. THE ARBITRATOR MAY NOT CONSOLIDATE, COMBINE, OR JOIN THE CLAIMS OF OTHER PARTIES WHO MAY BE SIMILARLY SITUATED OR OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING.

*Id.* Walker's response to Plaintiff's complaint is due on August 9, 2024, and Walker intends to move to compel individual arbitration and expressly reserves and does not waive its rights in that regard.

### B.     Plaintiff Consented to Receiving Marketing Communications

Plaintiff provided prior express written consent to receiving marketing communications, such that Plaintiff will have no viable TCPA claim against Walker

4

in arbitration, even if any of the alleged offending communications could be tied to Walker (they cannot be). The TCPA permits communications "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). When Plaintiff visited Motor Vehicle Accident's website, input his information, checked the box next to consent language, and clicked "Submit," he agreed to "receive telephone calls, email or text by a personal injury advisor via automatic dialing system and pre-recorded calls and artificial voice messages from motorvehicleaccident.us and one or more of its Marketing Partners." *See, e.g.*, *Lundbom v. Schwan's Home Serv., Inc.*, 2020 WL 2736419, *8 (D. Or. 2020) (prior express consent given under the TCPA where plaintiff clicked the check box next to the consent language).

## II.  ARGUMENT

Parties generally "may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" absent a court order. *See Bath Auth., LLC v. Anzzi LLC*, 2018 WL 5112889, *8 (E.D. Pa. 2018) (quoting Fed. R. Civ. P. 26(d)(1)). This Court's standing order "discourages discovery prior to the Rule 16 conference." *See* Trial Standing Order, available at https://www.pamd.uscourts.gov/content/chief-judge-matthew-w-brann.

The Third Circuit has not adopted a definitive standard for analyzing requests for expedited discovery, but courts in this Circuit apply either a "good cause" standard or an "injunctive relief" standard. Under the latter, discovery is only

5

permitted when the moving party has demonstrated "(1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of the irreparable injury and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Bath Auth., LLC*, 2018 WL 5112889, *8.

> **A.    The Discovery Plaintiff Seeks Will Not Show He Did *Not* Agree to Arbitration and Did *Not* Provide TCPA Consent**

Plaintiff asserts that the "subscriber information for the IP address at issue will affirmatively bear on and prove . . . that Mr. Jackson never visited the website, and therefore could not possibly have consented to the calls, let alone agreed to arbitrate his claims." Motion at 3. Not so. Even *assuming* that Comcast's records do not explicitly associate the IP address at issue with Plaintiff, that does not mean Plaintiff did not visit the website, did not consent to be called, and did not agree to individual arbitration.

An "IP address identifies a computer," not a person. *See Johnson v. Microsoft Corp.*, 2009 WL 1794400, *4 (W.D. Wash. 2009); *see also Eichenberger v. ESPN, Inc.*, 2015 WL 7252985, *4-5 (W.D. Wash. 2015). IP addresses thus do not identify a "user's name or mailing address," and some service providers, like Comcast, assign "dynamic IP addresses that change each time the user connects to the Internet." *Johnson*, 2009 WL 179440, *3; *see also* Guidance for Law Enforcement,

Comcast, at 2 (last updated August 2022), attached hereto as Exhibit 1 and available at https://assets.xfinity.com/assets/dotcom/projects/cix-4479_legal_documentation_sitecore_migration/Comcast%20Guide%20for%20Law%20Enforcement%20-%20August%202022.pdf ("Comcast's residential subscribers are not assigned a constant or static IP address, but rather are assigned a dynamic IP address").

IP addresses and information associated with them do not identify who owns the computer accessing the internet, who was using the computer at the time, or where the computer was physically located. *See In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, *11 (D.N.J. 2014). As the court in *In re Nickelodeon* explained:

> [T]he computer on which this Opinion was written is located in Newark, New Jersey, but the IP address associated with it is geographically located in Philadelphia—presumably where the Third Circuit's computer servers are. Knowing anonymized information about a computer, and an IP address associated with that computer, will not link [to] actual people.

*Id.* Thus, even if Comcast's records related to the IP address do not link to Plaintiff, that is not dispositive of whether Plaintiff provided TCPA consent and agreed to individual arbitration.

### B. Time Is Not of the Essence, and No Irreparable Injury Is Threatened

Even if Plaintiff is correct that Comcast's records associated with the IP address could disprove that Plaintiff agreed to arbitration and gave consent (they

cannot), Plaintiff has not established that time is of the essence such that accelerated discovery is required to avoid irreparable harm.

Plaintiff claims, without citation or support, that Comcast's retention period is 90 days. Motion at 2. In fact, Comcast's retention policy states that its "IP address logs are retained for 180 days," Exhibit 1 at 2, which Plaintiff later admits. *See* Mot. at 6 ("Counsel for Plaintiff also notes that Comcast's publicly available law enforcement subpoena policy indicates that it retains IP logs for 180 days.").[3] Plaintiff tries to undermine his admission about Comcast's policy by claiming that a preservation request must still be submitted within 90 days, again without citation or support. In fact, the reference to 90 days in the Comcast policy does not limit the 180-day retention period; instead, it provides law enforcement a mechanism to *extend* that period by 90 days. *See* Exhibit 1 at 3 (stating that agencies can "request that the subscriber information . . . be preserved beyond its normal retention period," so long as the 90-day extension request is "received prior to the expiration of the initial period."). In other words, the 90-day period that Plaintiff alludes to is *in addition to* the 180-day retention period, *not* instead of the 180-day period, and here, that 180-day period would run through at least October 26, 2024.

---

[3] Plaintiff also claims he sent a preservation letter to Comcast, but he does not attach the letter or any response, such that his claims cannot be credited.

8

Walker respectfully submits that Plaintiff has not established the basis of his Motion. Plaintiff requests that the Court grant such relief as it deems appropriate.

Dated: July 18, 2024

Respectfully submitted,

<u>/s/ Jordan L. Hughes</u>

Robert C. Collins III (*pro hac vice*)
**LATHAM & WATKINS LLP**
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel.: (312) 876-7700
Facsimile: (312) 993-9767
Email: robert.collins@lw.com

Jordan L. Hughes (PA 330649)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel.: (202) 637-2200
Facsimile: (202) 637-2201
Email: jordan.hughes@lw.com

*Attorneys for Defendant Walker Advertising, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 18, 2024, the foregoing document was electronically filed with the Clerk of the Court by using the CM/ECF system, which served all relevant parties.

Dated:  July 18, 2024	*/s/ Jordan L. Hughes*

Jordan L. Hughes (PA 330649)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Tel.: (202) 637-2200
Facsimile: (202) 637-2201
Email: jordan.hughes@lw.com